PHILIP TREADWELL v. THE STATE.

No. 8686.    Delivered March 11, 1925.

1.—Theft by Conversion—Charge of Court—On Fraudulent Taking—Erroneous.

Where the information charges appellant with theft by conversion it is error for the court in applying the law to the state's theory to charge on theft by fraudulent taking.

2.—Same—Venue—Place of Conversion.

Where on a trial for theft by conversion, the evidence establishes that the place of conversion was in another county, the jury should have been instructed that if they so believed, to acquit the defendant. The venue of the offense of conversion by a bailee is in the county in which the conversion was consummated. See numerous cases cited in this opinion.

Appeal from the County Court of Throckmorton County. Tried below before the Hon. John Lee Smith, Judge.

Appeal from a conviction of theft by conversion; penalty, a fine of $100.00 and thirty days in the county jail.

A. J. Smith of Haskell, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under convictoin for theft by conversion of a saddle, the property of John T. Massie. Punishment is a fine of $100 and thirty days confinement in the county jail.

The facts upon which the prosecution was based follow: Some time during the month of February appellant went to the sheriff's office to borrow a saddle from the sheriff. The sheriff had sold his saddle. Massie was present and hearing the request told appellant he had a saddle at his house which he would loan him. Appellant got the saddle. He claimed it was in bad condition; that the horn was broken and no girth on it, and some other defects about it which it was necessary for him to fix before he could use it. Massie claims that after appellant had the saddle about three weeks he began to ask appellant to return it which he agreed to do, but instead of returning it he quit riding the saddle; that later appellant told him he was having a horn put on the saddle at Haskell, and later admitted that it had been sold; that he then agreed to pay for the saddle but never did and that the complaint charging him with the conversion of it followed. The loan of the saddle to appellant was made in Throckmorton and the request for the return of it was made there. Appellant testified that on Sunday before the first Monday in March or April he and Frank Buchanan took four horses from Throckmorton to Haskell in Haskell County for the purpose of selling them; that he used his brother's saddle in riding to Haskell but was to leave it there; that appellant's father was going to Haskell with a load of hay and appellant put the Massie saddle on his father's wagon in order that he might have it to ride back to Throckmorton after having transacted his business there; that he and Buchanan stopped at Hightower's Wagon Yard; that by agreement between him and Buchanan the latter was to buy the oats to feed the horses which were at the yard and that appellant got the hay for that purpose from his father's wagon; that he had no knowledge that Buchanan had not paid for the oats; that Mrs. Buchanan and another lady were in Haskell and that appellant and Buchanan returned to Throckmorton with them in the car; that Buchanan put his saddle in the car but there was not room for the Massie saddle too and that he left it at Hightower's Wagon Yard expecting to get it later; that in a few days he requested his wife's sister and a young man who were going to Haskell in a car to go to the wagon yard and get the Massie saddle; they reported when they came back that it was being held by Hightower for some charges; that within two or three days after getting this information from them he went to Haskell to get the saddle when Mr. Hightower told him he had been holding it for the "wagon yard fees" of $1.90 which he and

Buchanan owed and that he had traded the saddle off; that both appellant and Mr. Hightower tried to locate the party to whom the saddle had been traded but without success; that when he came back to Throckmorton he told Massie what had occurred and offered to pay him for the saddle but had been unable to do so. Hightower testified that he did not know whether the saddle belonged to appellant or Buchanan but that appellant's fother told him "the boys" had left it there and that he was holding it to secure the $1.90 which was due him for oats furnished them; that he had traded the saddle off without appellant's knowledge or consent; that some young man and young lady had come to the yard and told him appellant had sent them to get the saddle but he declined to let them have it, giving as his reason that he was holding it for the wagon yard fee; that they told him if there were any charges against it they would not take it; that he traded it off the next day after they were there; that a few days later appellant came after the saddle; that appellant received nothing from the proceeds of it.

The case was submitted in the most general terms. After defining theft, and "fraudulent taking," and telling the jury that one in possession of property by contract of borrowing who fraudulently converts it to his own use without the owner's consent is guilty of theft, the court applied the law as follows:

"Now, if from the evidence you are satisfied, beyond a reasonable doubt that the defendant committed theft as set out by the law herewith presented, and in the manner, and at the time and place described in the information, and that the property alleged to have been fraudulently taken and converted, was the property of the said John T. Massie, and that the same was fraudulently taken and converted without the consent of the John T. Massie, with the intent to deprive the owner of the value of the same and to appropriate it to the use and benefit of him, the said defendant, then you will find the defendant guilty."

Exceptions in writing were timely presented to the general manner of the application of the law, and to the submission of a fraudulent "taking" when the evidence showed beyond dispute that the "taking" was lawful. Appellant requested two special charges; one to the effect that if any offense was committed at all the state had failed to prove in what county it occurred, therefore an acquittal should result; the other that if Hightower disposed of the saddle without the knowledge or consent of appellant, and appellant received none of the proceeds he would not be guilty. Both special charges were refused. If the state was relying upon the disposition of the saddle in Haskell to show its conversion Throckmorton County had no jurisdiction for the offense would have been committed in Haskell County. The venue of the offense of conversion by a bailee is in the county in which the conversion was consummated. Lopez v.

State, 37 Texas Crim. Rep. 649, 40 S. W. 792; Abbey v. State, 35 Texas Crim Rep. 589; 34 S. W. 930; Yost v. State, —— Texas Crim. Rep., —— 38 S. W. 192; McAllister v. State, —— Texas Crim. Rep., —— 128 S. W. 123; ·Pickrell v. State, —— Texas Crim. Rep., —— 123 S. W. 938. Other. cases are collated in the note seven under Art. 258, Vernon's C. C. P. The jury should have been told specifically that unless they beleived from the evidence beyond a reasonable doubt that appellant converted the saddle in Throckmorton County they should acquit him. Upon this point the evidence seems lacking in cogency. Appellant's explanation of why he took the saddle to Haskell and left it there is not questioned. That he sent after it and later went himself to get it is shown by testimony other than his own, and these facts do not comport with a fraudulent purpose to convert it when he removed it from Throckmorton County.

The judgment is reversed and the cause remanded. .

*Reversed and remanded.*